FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

# Dec 03, 2020

SEAN F. McAVOY, CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MATT ROBINS, an individual; RONALD VICTOR ARTHUN, an individual;<br><br>       Plaintiffs,<br><br> v.<br><br>NUVASIVE, INC.; NEXUS SURGICAL INNOVATIONS, INC., a Washington State corporation,<br><br>       Defendant. | NO:  2:20-CV-292-RMP<br><br>ORDER DENYING NUVASIVE, INC. & NEXUS SURGICAL INNOVATION, INC.'S MOTIONS FOR PRELIMINARY INJUNCTION |

BEFORE THE COURT are motions by NuVasive, Inc. ("NuVasive) and neXus Surgical Innovations, Inc. ("neXus") to enjoin former employees Mr. Matt Robins, ECF No. 14, and Mr. Ronald Arthun, ECF No. 17, from violating the restrictive covenants in their "Confidential Information, Inventions, Nonsolicitation and Noncompetition Agreements" ("Agreement").  These Agreements were entered into by Mr. Robins and Mr. Arthun as a prerequisite to their employment with

neXus.  *See* ECF Nos. 21-1, 22-1.  NuVasive is a third-party beneficiary to the Agreements.  ECF Nos. 21-1 at 7, 22-1 at 7.

A hearing was held on this matter on November 24, 2020, at which all parties were represented, and the entry of a preliminary injunction was contested.  Upon consideration of the attorneys' arguments, record, relevant statutes, and case law, the Court is fully informed.

The Complaint against Mr. Robins is filed in Case No. 2:20-cv-331-RMP, ECF No. 1, the "Robins Complaint."  The Complaint against Mr. Arthun is filed in Case No. 2:20-cv-342-RMP, ECF No. 1, the "Arthun Complaint."

## BACKGROUND

NuVasive is a medical device company focused on product development for the surgical treatment of spinal disorders.  Robins Complaint at 2.  NuVasive's products are marketed by exclusive sales agents, such as neXus.  *Id.*  NeXus had a sales territory encompassing all or part of Washington, Montana, Utah, Wyoming, and Idaho.  *Id.*

**Mr. Robins**

Mr. Robins was hired by neXus in December 2018 and began working  as a Spine Associate for neXus on January 7, 2019.  ECF No. 1-1 at 4.  Upon being offered employment, Mr. Robins received a copy of the "Confidential Information, Inventions, Nonsolicitation and Noncompetition Agreement."  ECF No. 21-1.  NuVasive is a third-party beneficiary of the Agreement.  *Id.* at 7.  Mr. Robins' initial

gross annual salary approximately was $80,000.  Case No. 2:20-cv-331-RMP, ECF No. 1-1 at 1.

On August 5, 2019, Mr. Robins received a promotion to the position of Spine Specialist.  ECF Nos. 1-1 at 5; 22 at 6.  After a trial period, Mr. Robins claims his compensation should have been 100% commission pursuant to the neXus "Standard Spine Specialist Plan."  ECF No 22 at 10–11.  However, as of May 18, 2020, Mr. Robins still was being paid a regular monthly salary of approximately $8,333 and was promised that a formal commission plan would follow in the summer of 2020. ECF Nos. 25-2 at 7, 42.

Mr. Robins resigned from neXus on May 31, 2020, and immediately became employed in a similar role with a competitor company, Alphatec Spine, Inc. ("Alphatec").  ECF No. 22 at 2.  Mr. Robins is alleged to have immediately solicited neXus surgeon-customers on behalf of Alphatec.  *Id.*  On June 4, 2020, Mr. Robins purportedly supported a surgery, on Alphatec's behalf, performed by a former NuVasive/neXus surgeon-customer.  *Id.* at 6–7.

**Mr. Arthun**

Mr. Arthun began working for neXus in April 2018 as a Spine Associate. ECF No. 1-1 at 6.  Upon being offered employment, Mr. Arthun received a copy of the "Confidential Information, Inventions, Nonsolicitation and Noncompetition Agreement."  ECF No. 21-1.  NuVasive is also named as a third-party beneficiary of the Agreement between neXus and Mr. Arthun.  *Id.* at 7.

As a Spine Associate, Mr. Arthun's job was to assist a Spine Specialist in advising surgeons regarding the use of surgical implants sold by neXus. ECF No. 1-1 at 6. His initial gross annual salary was $72,000. Case No. 2:20-cv-342-RMP, ECF No. 1-3 at 1. In August 2018, Mr. Arthun received a raise and his gross annual salary increased to $96,000. ECF No. 1-1 at 7.

On December 13, 2019, Mr. Arthun received a promotion to the position of Spine Specialist. Case No. 2:20-cv-342-RMP, ECF No. 1-3 at 1. As a Spine Specialist, Mr. Arthun's compensation allegedly was going to be 100% commission based pursuant to the neXus "Standard Spine Specialist Plan." *Id.* Mr. Arthun was paid in accordance with the "Standard Spine Specialist Plan" from January 2020 to his resignation in June. ECF No. 1-1 at 7. Mr. Arthun claims that he earned commissions of approximately $56,000 over that six-month period. *Id.*

Mr. Arthun resigned from neXus in June of 2020 and became employed in a similar role with a competitor company, Alphatec. ECF No. 21 at 4. On July 27, 2020, Mr. Arthun allegedly supported surgeries at Bozeman Deaconess performed by a former NuVasive/neXus surgeon-customer. Arthun Complaint at 10. NuVasive alleges that Mr. Arthun is soliciting former neXus surgeon-customers in Bozeman, Montana on behalf of Alphatec. *Id.*

/ / /

/ / /

/ / /

**Alphatec**

NuVasive contends that the spinal hardware industry is highly competitive. Robins Complaint at 3. Industry participants entrust their sales representatives, such as Mr. Robins and Mr. Arthun, with confidential and proprietary information, give them access to their established customers, and often provide them with proprietary training. *Id.* Alphatec is one of NuVasive's direct competitors in the spinal hardware industry. *Id.* at 6. NuVasive claims that it is impossible for Alphatec sales representatives to perform their job without soliciting existing or potential surgeon-customers of NuVasive. *Id.* at 6–7.

Mr. Robins and Mr. Arthun brought suit against NuVasive and neXus alleging breach of contract, recovery of unpaid wages, and a declaratory judgment regarding the Agreements that they entered into with neXus. *See* ECF No. 1-1. NuVasive and neXus brought suit against Mr. Robins, Case No. 2:20-cv-331-RMP, and against Mr. Arthun, Case No. 2:20-cv-342-RMP, claiming breach of contract for alleged violations of the confidentiality, noncompetition, and nonsolicitation obligations set forth in the Agreements. The cases were consolidated. ECF No. 12. NuVasive and neXus now move for a preliminary injunction to enjoin Mr. Robins and Mr. Arthun from violating the restrictive covenants contained in the Agreements. ECF Nos. 14, 17.

/ / /

/ / /

## LEGAL STANDARD

Courts may issue preliminary injunctions to prevent immediate and irreparable injury. Fed. R. Civ. P. 65. Case law emphasizes that a preliminary injunction is an "extraordinary and drastic remedy" that may be granted only upon a "clear showing" that the movant is entitled to such relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). A party seeking a preliminary injunction must make a "clear showing" that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tip in its favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

In the Ninth Circuit, courts weigh these factors "on a sliding scale, such that where there are only serious questions going to the merits—that is, less than a likelihood of success on the merits—a preliminary injunction may still issue as long as the balance of hardships tips sharply in the plaintiff's favor and the other two factors are satisfied." *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (internal quotations omitted).

## DISCUSSION

### I.    Likelihood of Success on the Merits

As the moving party, NuVasive and neXus must make a "clear showing" that they are likely to succeed on the merits. NuVasive and neXus argue they are likely to succeed on the merits because the restrictive covenants are enforceable, and Mr.

Robins and Mr. Arthun will continue to violate the covenants' terms through their employment with Alphatec. ECF No. 6-1 at 8. Mr. Robins and Mr. Arthun argue that newly enacted Chapter 49.62 of the Revised Code of Washington precludes success on the merits because the restrictive covenants do not satisfy the statute's requirements and are, therefore, unenforceable. ECF No. 19 at 6.

Accordingly, the Court turns to (1) whether the restrictive covenants at issue are enforceable under Washington State law, and (2) if enforceable, whether the record contains sufficient evidence that Mr. Robins and Mr. Arthun have breached the restrictive covenants that NuVasive and neXus seek to enforce.

## 1.   Enforceability of Restrictive Covenants

### A. Noncompetition Covenant

Washington State's new anti-noncompete law, Wash. Rev. Code § 49.62.020, was enacted based on the legislature's finding that "workforce mobility is important to economic growth and development." Wash. Rev. Code § 49.62.005. Chapter 49.62 applies retroactively to all cases filed after January 1, 2020, regardless of when the cause of action accrued. Wash. Rev. Code § 49.62.100. Although the Agreements at issue were entered into by Mr. Robins and Mr. Arthun prior to January 1, 2020, the sales representatives' separation from neXus and subsequent employment occurred after January 1, 2020. All three suits consolidated into the present action also were commenced after January 1, 2020. Accordingly, Chapter 49.62 applies to this case.

Under the new statutory scheme, noncompetition agreements are void and unenforceable unless they satisfy three statutory requirements. Wash. Rev. Code. § 49.62.010; *see also A Place for Mom v. Perkins*, 2020 WL 4430997 at *5 (W.D. Wash. Jul. 31, 2020). First, prior to or when the employee accepts the offer of employment, the employer must disclose the terms of the noncompete covenant in writing to the prospective employee, and, if the agreement becomes enforceable only at a later date due to the changes in the employee's compensation, the employer must specifically disclose that the agreement may be enforceable against the employee in the future. Wash. Rev. Code § 49.62.020(1)(a)(i). Second, the employee's "earnings" must exceed $100,000. Wash. Rev. Code § 49.62.020(1)(b). Third, the employee's separation cannot result from being laid off. Wash. Rev. Code § 49.62.020(1)(c). The parties dispute whether the first requirement, regarding disclosure as to future enforceability, and the second requirement, regarding the employee's annual salary, are satisfied.

### i.    Disclosure

Pursuant to Wash. Rev. Code § 49.62.020(1)(a)(i), the terms of the covenant must be disclosed in writing no later than when the offer is accepted. If the agreement becomes enforceable only at a later date due to the changes in the employee's compensation, the employer also must disclose specifically that the agreement may be enforceable against the employee in the future. Wash. Rev. Code § 49.62.020(1)(a)(i). Thus, notice of the terms in writing prior to or upon acceptance

of employment is not enough if the employee's compensation initially does not

exceed the earnings threshold. An additional disclosure by the employer to the

employee with respect to future enforceability is required.

Mr. Robins and Mr. Arthun received the Agreements, with the noncompete

obligations, upon receiving offers of employment from neXus. ECF Nos. 21 at 2; 22

at 4. Section 4 of both Agreements set forth the following terms comprising the

noncompetition covenant:

> **4.3** During the Term and for one year after the end of the Term, I
> will not engage in, be employed by, perform services for, participate in
> the ownership, management, control or operation of, or otherwise be
> connected with, either directly or indirectly, any Competing Business.
> For purposes of this paragraph, I will not be considered to be connected
> with any Competing Business solely on account of: my ownership of
> less than five percent of the outstanding capital stock or other equity
> interests in any Person carrying on the Competing Business. I agree
> that this restriction is reasonable, but further agree that should a court
> exercising jurisdiction with respect to this Agreement find any such
> restriction invalid or unenforceable due to unreasonableness, either in
> period of time, geographical area, or otherwise, then in that event, such
> restriction is to be interpreted and enforced to the maximum extent
> which such court deems reasonable.

ECF Nos. 21-1 at 4–5 (Arthun); 22-1 at 4–5 (Robins). The Agreements impose

noncompete obligations for a term of one-year. ECF Nos. 21-1 at 4–5; 22-1 at 4–5.

There is no dispute that the terms of the covenant were disclosed in writing in a

timely manner when Mr. Robins and Mr. Arthun initially were offered employment

with neXus.

1    However, when Mr. Robins and Mr. Arthun entered into the Agreements

2    neither of their annual earnings exceeded $100,000.  Mr. Arthun had a guaranteed

3    annual salary of $72,000.  Case No. 2:20-cv-342-RMP, ECF No. 1-3.  Mr. Robins

4    had a guaranteed salary of approximately $80,0000.  Case No. 2:20-cv-331-RMP,

5    ECF No. 1-1.  NuVasive and neXus argue that because Chapter 49.62 only became

6    effective as of January 1, 2020, the obligations at issue were enforceable and binding

7    on Mr. Robins and Mr. Arthun at the time that they signed their respective

8    Agreements so no additional disclosure as to future enforceability was required.

9    ECF No. 25 at 6.  However, this argument ignores the plain language of the statute

10   that the chapter applies to all proceedings commenced on or after January 1, 2020,

11   regardless of when the cause of action arose.  Wash. Rev. Code § 49.62.100.  It is

12   immaterial that the Agreements' terms may have been binding on the sales

13   representatives prior to the enactment of Chapter 49.62.  As of January 1, 2020, such

14   disclosure was required by law as a predicate to enforcement.

15   Because Mr. Robins' and Mr. Arthun's guaranteed annual income did not

16   exceed the current earnings threshold of $100,000 when they were offered

17   employment, the Agreements only would become enforceable at a later date due to

18   changes in their compensation.  Wash. Rev. Code. § 49.62.020(1)(a)(i).  In such a

19   case, the employer must specifically disclose that the agreement may be enforceable

20   against the employee in the future.  The Agreements at issue do not include such

21

ORDER DENYING NUVASIVE, INC. & NEXUS SURGICAL INNOVATION,
INC.'S MOTIONS FOR PRELIMINARY INJUNCTION ~ 10

disclosure and there is no evidence of an additional disclosure by NuVasive or neXus in the record before the Court.

There is also no evidence that NuVasive or neXus disclosed the enforceability of the noncompetition covenant when neXus offered Mr. Robins and Mr. Arthun their respective promotions to the position of Spine Specialist along with the associated raise in compensation.

Mr. Robins was promoted to the position of Spine Specialist in August of 2019. ECF No. 22 at 6. Mr. Robins maintains that the only Agreement he entered into was at the outset of his employment in December 2018. *Id.* at 4. The record does not contain evidence indicating otherwise.

Mr. Arthun was promoted to the position of Spine Specialist, effective January 1, 2020. Case No. 2:20-cv-342-RMP, ECF No. 1-5. When neXus offered Mr. Arthun the promotion, the offer letter stated that "[a]s a condition of [his] employment, [he] will be required to sign the enclosed Confidentiality, Non competition [sic] and Invention Assignment Agreement". *Id.* However, in the record before the Court, there is no Agreement enclosed with the offer letter. *Id.* Furthermore, Mr. Arthun maintains that he did not sign a new Agreement, and the record does not contain a second executed Agreement between Mr. Arthun and neXus. ECF No. 21 at 3.

Thus, the noncompetition covenant is unenforceable against Mr. Robins and Mr. Arthun because neXus, as the employer, failed to "specifically disclose that the

agreement may be enforceable against the employee in the future," as required by

Wash. Rev. Code § 49.62.020(1)(a)(i).

### ii.    Earnings

Even if NuVasive or neXus had made the required disclosures, which the

Court finds no evidence to support, the parties also dispute whether the second

statutory requirement, regarding the employee's compensation, satisfies the required

$100,000 benchmark.  *See* Wash. Rev. Code § 49.62.020(b).

A noncompetition covenant is void and unenforceable "[u]nless the

employee's earnings from the party seeking enforcement, when annualized, exceed

one hundred thousand dollars per year."  Wash. Rev. Code § 49.62.020(b).

"Earnings means the compensation reflected on box one of the employee's United

States internal revenue service form W-2 that is paid to an employee over the prior

year, or portion thereof for which the employee was employed, annualized and

calculated as of the earlier of the date enforcement of the noncompetition covenant is

sought or the date of separation from employment."  Wash. Rev. Code §

49.62.010(1).

NuVasive and neXus argue that the statute contemplates prorating and

annualizing earnings from the date of separation for the remainder of the year; thus

Mr. Robins' and Mr. Arthun's projected earnings for the entire year 2020 are

relevant and exceed $100,000 when annualized.  ECF No. 18 at 10.  Mr. Robins and

Mr. Arthun contend that the statute calls for a retrospective analysis of the

employee's earnings.  ECF No. 19 at 6–7.  The Court agrees with Mr. Robins and

Mr. Arthun that the analysis for "earnings" is retrospective, as opposed to

prospective, given the plain language of "prior year, or portion thereof" found in the

statutory definition of "earnings."  Wash. Rev. Code § 49.62.010(1).

A worker's "earnings" are calculated on the earlier of "the date of separation"

or "the date enforcement of the noncompetition covenant is sought." *Id*.  However,

the calculation looks back to the employee's previous calendar year and uses box

one of the W-2 form.  *Id*.  For example, if an employee quits on January 2, 2020, the

employee's "earnings," for the purpose of the statute, are the employee's 2019

earnings.  If in the previous year the employee worked only for a portion thereof,

then the earnings are annualized.  *Id.*

Here, Mr. Robins and Mr. Arthun's relevant "earnings" means the

compensation reflected on box one of their W-2 forms, paid to them over the prior

year.  Before 2020, neither Mr. Robins nor Mr. Arthun was paid "earnings" in

excess of $100,000 during a twelve-month period.  ECF Nos. 21 at 3, 25-2 at 7.

Accordingly, the second statutory requirement for enforcement of the

noncompetition covenant also is not satisfied.  Wash. Rev. Code 49.62.020(b).

**B. Nonsolicitation Obligations**

Mr. Robins and Mr. Arthun argue that the nonsolicitation covenants in the

Agreements are not enforceable subsequent to the enactment of Chapter 49.62

because they do not fall within the statutory definition of "nonsolicitation

agreement."  ECF No. 19 at 8.

The statute defines a "nonsolicitation agreement" as "an agreement between

an employer and employee that prohibits solicitation by an employee, upon

termination of employment: (a) Of any employee of the employer to leave the

employer; or (b) of any customer of the employer to cease or reduce the extent to

which it is doing business with the employer."  Wash. Rev. Code § 49.62.010(5).  In

comparison, a "noncompetition covenant" is defined to include "every written or

oral covenant, agreement, or contract by which an employee or independent

contractor is prohibited or restrained from engaging in a lawful profession, trade, or

business of any kind."  Wash. Rev. Code § 49.62.010(4).

Although Washington courts previously considered a nonsolicitation covenant

as "a type of covenant not to compete," Chapter 49.62 now distinguishes the two.

*Pac. Aerospace & Electronics, Inc. v. Taylor*, 295 F.Supp.2d 1205, 1215 (E.D.

Wash. 2003).  The definitions are provided to distinguish "nonsolicitation

agreements" from "noncompetition covenants," the latter of which now has express

statutory requirements as a predicate to enforceability.  Wash. Rev. Code. §

49.62.020.

Here, section 4 of both Agreements set forth the following terms:

**4.1**    During the Term and for one year after the end of the Term, I
will not induce, or attempt to induce, any employee or independent
contractor of neXus Surgical to cease such employment or relationship

ORDER DENYING NUVASIVE, INC. & NEXUS SURGICAL INNOVATION,
INC.'S MOTIONS FOR PRELIMINARY INJUNCTION ~ 14

to engage in, be employed by, perform services for, participate in the ownership, management, control or operation of, or otherwise be connected with, either directly or indirectly, any business that competes with neXus Surgical or NuVasive ("Competing Business").

**4.2**    During the Term and for one year after the end of the Term, I will not represent, promote or otherwise try to sell within any territory I served for neXus Surgical any lines or products that, in neXus Surgical's reasonable judgment, compete with NuVasive Products or other products
represented by neXus Surgical within that territory and I will not solicit (directly or indirectly) any current or former customers of neXus Surgical or NuVasive to purchase any products or lines that, in neXus Surgical's reasonable judgment, compete with NuVasive Products or other
products represented by neXus Surgical within that territory.  The one (1) year, post employment period during which the restrictions of this Section are applicable shall toll for any period of time in which I am not in compliance with my obligations.

ECF Nos. 21-1 at 4–5; 22-1 at 4–5.  In other words, the Agreement prohibits Mr. Robins and Mr. Arthun from (1) inducing or attempting to induce any employee or contractor of neXus to cease such employment to work for a competitor; (2) representing, promoting, or otherwise trying to sell in the territory they served any lines or products that, in neXus' reasonable judgment, compete with NuVasive Products; and (3) soliciting (directly or indirectly) any current or former customers of neXus Surgical or NuVasive to purchase any products or lines that, in neXus' reasonable judgement, compete with NuVasive Products.

Whereas the first and third restraint fit within the definition of a "nonsolicitation agreement," the second restraint effectively operates as a "noncompetition covenant."  The prohibition on the sale of competitor products is

ORDER DENYING NUVASIVE, INC. & NEXUS SURGICAL INNOVATION, INC.'S MOTIONS FOR PRELIMINARY INJUNCTION ~ 15

not limited to former NuVasive or neXus surgeon-customers within the territories serviced by Mr. Robins and Mr. Arthun.  By forbidding Mr. Robins and Mr. Arthun from selling a competitor's products within their previous sales territories, regardless of who the customer is, NuVasive and neXus are preventing the sales representatives from engaging in their profession within those previous sales territories.  Wash. Rev. Code § 49.62.010(4); *see also Pac. Aerospace & Electronics, Inc*, 295 F.Supp.2d at 1216 (finding restrictive covenant reasonable because "it was a fair method for protecting the employer's customer base" that did not "wholly prevent" the former employee "from engaging in his profession.").  Furthermore, there is an additional degree of subjective control reserved by NuVasive and neXus as to which "lines or products" are considered to be in competition with NuVasive products.

As written, the provision effectively operates as a noncompetition covenant and as such is subject to the statutory requirements of Wash. Rev. Code § 49.62.020.  Accordingly, section 4.2 prohibiting the sale of competitor products within the sales territory previously serviced by Mr. Robins and Mr. Arthun on behalf of neXus is unenforceable in part for the same reasons discussed *supra* regarding the noncompetition covenants:  failure to provide written notice of future enforcement and failure to meet the requisite salary level.

The Court will address the reasonableness of the remaining obligations and NuVasive and neXus' allegations that Mr. Robins and Mr. Arthun are violating the same *infra*.

ORDER DENYING NUVASIVE, INC. & NEXUS SURGICAL INNOVATION, INC.'S MOTIONS FOR PRELIMINARY INJUNCTION ~ 16

## C.  Reasonableness

Even if the statutory requirements were satisfied, which the Court finds that they are not, the Court still must consider whether enforcing the restrictive covenants is reasonable.  *A Place for Mom v. Perkins*, 2020 WL 4430997 at *5.  To decide whether a restrictive covenant is reasonable involves a consideration of three factors:

> (1) whether restraint is necessary for the protection of the business or goodwill of the employer;
>
> (2) whether it imposes upon the employee any greater restraint than is reasonably necessary to secure the employer's business or goodwill; and
>
> (3) whether the degree of injury to the public is such loss of the service and skill of the employee as to warrant nonenforcement of the covenant.

*Emerick v. Cardiac Study Ctr., Inc., P.S.*, 357 P.3d 696, 701 (Wash. Ct. App. 2015).  Since the noncompetition covenants are unenforceable pursuant to Chapter 49.62, the Court focuses its analysis on the reasonableness of the nonsolicitation obligations.  Specifically, the Court will analyze the reasonableness of Section 4.1, which precludes the sales representatives from inducing any employee or independent contractor of neXus to cease such employment, as well as Section 4.2, which precludes the sales representatives from soliciting current or former customers to purchase products that compete with NuVasive products.  ECF No. 21-1 at 4–5, 22-1 at 4–5.

ORDER DENYING NUVASIVE, INC. & NEXUS SURGICAL INNOVATION, INC.'S MOTIONS FOR PRELIMINARY INJUNCTION ~ 17

### i. Necessity

First, the Court considers whether the restraint is necessary to protect a party's business. *See id.* "Washington provides broad protection to tangible and intangible business interests and goodwill." *Amazon.com, Inc. v. Moyer*, 417 F. Supp. 3d 1388, 1396 (W.D. Wash. 2019). "[T]he law in Washington is clear that an employer has a legitimate interest in protecting its existing client base and in prohibiting the employee from taking [its] clients." *Emerick*, 357 P.3d at 722 (internal citations and quotation marks omitted). Therefore, to show necessity, a party must demonstrate that a protectable interest exists, and that opposing party's actions could pose a threat to that interest if not adequately restrained. *See id.* at 723 ("It is the potential to compete—not the actual competition—that makes the noncompete necessary.").

NuVasive and neXus have demonstrated that protectable goodwill and business interests exist with respect to their existing surgeon-customers. NuVasive and neXus contend that the spinal hardware industry is highly competitive. Case No. 2:20-cv-331-RMP, ECF No. 1 at 3. Mr. Arthun's and Mr. Robin's new employer, Alphatec, is a direct competitor of NuVasive and neXus. *Id.* at 6. Due to the industry's highly competitive nature, Alphatec also purportedly requires its employees to sign noncompete agreements as a condition to employment. *Id.* at 3. Alphatec allegedly sells its products to a similar customer base, including surgeon-customers whom Mr. Robins and Mr. Arthun previously had supported on behalf of NuVasive as neXus. *Id.* at 7; Arthun Complaint at 10.

ORDER DENYING NUVASIVE, INC. & NEXUS SURGICAL INNOVATION, INC.'S MOTIONS FOR PRELIMINARY INJUNCTION ~ 18

Mr. Robins and Mr. Arthun argue that because NuVasive is in the process of purchasing neXus, no restraint is necessary for the protection of the business or goodwill of the employer in this case, neXus.  ECF Nos. 19 at 7; 25 at 7.  The Court does not find this argument persuasive.  The Agreements explicitly state that NuVasive has the authority to enforce its provisions as a third-party beneficiary to the Agreement.  NeXus was an exclusive sales agent of NuVasive products in Washington, Montana, Utah, Wyoming, and Idaho.  Robins Complaint at 2.  To the extent that neXus has protectable interests, NuVasive shares those same interests in the sale of its products to customers in neXus' former sales region, notwithstanding neXus' dissolution as a separate entity.

Accordingly, the Court finds that there is a protectable business interest and that a nonsolicitation agreement is necessary to protect those interests.

**ii.  Scope**

Second, the Court looks to whether the restraint is greater than reasonably necessary for the protection of the business or goodwill of the employer.  *Emerick*, 357 P.3d at 703.  Specifically, the Court considers a covenant's geographic and temporal scope.  *Id*.

With respect to a covenant's geographic scope, "[i]t is reasonable for the employer to preclude the employee from servicing those who were clients of the employer during the period of employment and for a period after the cessation of employment."  *Id*. at 1063 (quoting *Perry v. Moran*, 748 P.2d 224, 229 (Wash.

1987)); *see also Seabury & Smith, Inc. v. Payne Fin. Grp., Inc.* 393 F.Supp.2d 1057, 1062 (E.D. Wash. 2005) (upholding nonsolicitation covenant as reasonable because it was "limited in duration to the relatively short time period of one-year" and "reasonably limited in scope to Plaintiff's clients who were solicited or serviced during employee's term of service with Plaintiff.").

Here, Section 4.2 is reasonable in scope as its restrictions on solicitation are limited to the sales territory that the employees serviced on behalf of NuVasive and neXus.  ECF Nos. 21-1 at 4–5, 22-1 at 4–5.

However, with respect to soliciting current or former surgeon-customers, section 4.2 states:

> I will not solicit (directly or indirectly) any current or former customers of neXus Surgical or NuVasive to purchase any products or lines that, in neXus Surgical's reasonable judgment, compete with NuVasive Products or other products represented by neXus Surgical within that territory.

ECF No. 21-1 at 5, 22-1 at 5.  As noted above, the Court finds that the ability of NuVasive and neXus to determine which products or lines in their "reasonable judgment" compete with NuVasive Products is an overbroad reservation of discretion. An employer's unilateral decision as to which products a former employee may or may not sell or endorse is contrary to the purpose of the statute, which is to provide workplace mobility, especially if the determination is made only after the solicitation already occurred.

ORDER DENYING NUVASIVE, INC. & NEXUS SURGICAL INNOVATION, INC.'S MOTIONS FOR PRELIMINARY INJUNCTION ~ 20

1      With respect to temporal scope, courts have found that restrictions with a

2  duration of one-year are reasonable.  *See Seabury & Smith, Inc.*, 393 F.Supp.2d at

3  1062.  In this case, the nonsolicitation restrictions extend for one year after the end

4  of the employee's term of employment.  ECF Nos. 21-1 at 4, 22-1 at 4.  However,

5  the Agreements state that the one-year period during which the restrictions are

6  applicable "shall toll for any period of time in which the sales representative is not in

7  compliance."  ECF Nos. 21-1 at 5, 22-1 at 5.  The tolling of the period of time that

8  restrictions remain in effect is not per se unreasonable.  *See Emerick*, 357 P.3d at

9  706 (finding that court was within its equitable authority when it tolled the running

10  of the restrictive covenant so former employee could not benefit from the expiration

11  of the covenant due to pending litigation).[1]

12      Therefore, the Court finds that the nonsolicitation obligations found in

13  Sections 4.1 and 4.2 impose a reasonable restraint on former employers.

14

15  _____

16  [1] Under Washington's new non-compete law, a noncompetition covenant with a
    duration exceeding eighteen months is presumptively unreasonable and

17  unenforceable.  Wash. Rev. Code § 49.62.020(2).  To rebut this presumption, a
    party seeking enforcement must prove by clear and convincing evidence that a

18  duration longer than eighteen months is necessary to protect the party's business or
    goodwill.  *Id.*  The Court notes that the restrictions on their face do not exceed

19  eighteen months in duration but, with tolling, there is a possibility that an
    employee would be subject to the restrictions for more than eighteen months.  The

20  statute does not address whether the presumption of unreasonableness would be
    triggered if a noncompetition covenant exceeded eighteen months due to tolling.

21

ORDER DENYING NUVASIVE, INC. & NEXUS SURGICAL INNOVATION,
INC.'S MOTIONS FOR PRELIMINARY INJUNCTION ~ 21

### iii.    Public Policy

Third, courts consider whether enforcement of the covenant creates a possibility of harm to the public, balanced against the employer's right to protect its business. *Emerick,* 357 P.3d at 705. "Such harm may include restraint of trade, limits on employment opportunities, and denial of public access to necessary services." *Id.* Neither party raises the issue of harm to the public nor is the Court aware of a risk of harm to the public that would be created by enforcing the nonsolicitation covenants.

### 2.  Mr. Robins' & Mr. Arthun's Potential Breach of Restrictive Covenants

Having addressed the issues with enforceability, the Court next considers whether NuVasive and neXus have made a "clear showing" of the likelihood that Mr. Robins and Mr. Arthun breached the nonsolicitation covenants.

With respect to Section 4.1, which prohibits inducing another employee to cease their relationship with neXus and become employed with a competing business, there is no evidence that either Mr. Robins or Mr. Arthun induced or attempted to induce other neXus employees to join Alphatec. Mr. Michael Marquardt, a Spine Specialist for NuVasive/neXus, explored the possibility of employment with Alphatec in the summer of 2020; however, Mr. Marquardt asserts that Mr. Robins played no role in that process. ECF No. 25-3 at 4.

Section 4.2 prohibits an employee from directly or indirectly soliciting current or former customers of neXus to purchase a competitor's products. ECF No. 21-1 at

ORDER DENYING NUVASIVE, INC. & NEXUS SURGICAL INNOVATION, INC.'S MOTIONS FOR PRELIMINARY INJUNCTION ~ 22

4–5, 22-1 at 4–5.  NuVasive and neXus maintain that because "sales representatives in the spine industry solicit their surgeon-customers on a near daily basis," Mr. Robins and Mr. Arthun are in breach of this provision by nature of their employment with Alphatec.  ECF No. 25 at 9.  Mr. Robins and Mr. Arthun argue that there is no evidence that they solicited any current or former NuVasive or neXus surgeon-customers to stop using NuVasive products.  ECF No. 8–9. Furthermore, they contend that the surgeon-customers identified in the record independently decided to discontinue or reduce their use of NuVasive products without Mr. Robins' or Mr. Arthun's knowledge or involvement and prior to their leaving employment with NuVasive.  ECF Nos. 19 at 4; 21 at 8–10; 22 at 12–13.

**Mr. Robins**

NuVasive and neXus allege that Mr. Robins supported a surgery on behalf of Alphatec performed on June 4, 2020, by Mr. Robins' primary neXus/NuVasive surgeon-customer, Dr. Dan Blizzard.  Robins Complaint at 7.  Mr. Robins contends that in May of 2020, Dr. Blizzard had decided to transition to the use of Alphatec products based upon communications with other surgeons, and informed Mr. Robins of the same.  ECF No. 22 at 12.  Dr. Tohmeh allegedly began to use fewer NuVasive products in 2019.  *Id.*  Both Drs. Blizzard and Tohmeh allegedly urged Mr. Robins to consider employment with Alphatec.  *Id.* at 13–14.  Since Mr. Robins was on a commission-based salary, and these surgeons were his primary customers, there was a financial incentive to seek employment with Alphatec.  *Id.* at 14.

ORDER DENYING NUVASIVE, INC. & NEXUS SURGICAL INNOVATION, INC.'S MOTIONS FOR PRELIMINARY INJUNCTION ~ 23

1
2
3
4
5
6

Mr. Robins separated from neXus on May 31, 2020 and immediately began working for Alphatec.  Case No. 2:20-cv-331-RMP, ECF No. 1-3.  Mr. Robins acknowledged that his Alphatec territory includes two former NuVasive/neXus surgeon-customers, Drs. Dan Blizzard and Tony Tohmeh.  *Id.*  However, these surgeons allegedly elected to use Alphatec products prior to Mr. Robins' employment with the company.  *Id*.

7

**Mr. Arthun**

8
9
10
11
12
13
14

NuVasive and neXus allege that Mr. Arthun was supporting surgeries and soliciting surgeon-customer, Dr. Ben Smith, on behalf of Alphatec.  Arthun Complaint at 10.  Mr. Robins contends that in May of 2020 Dr. Smith had made the decision to transition to the use of Alphatec products and informed Mr. Arthun of the same.  ECF No. 21 at 8–9.  Mr. Arthun allegedly accepted an employment offer from Alphatec on June 16, 2020, and separated from neXus on June 21, 2020.  Arthun Complaint at 8.

15
16
17
18
19
20

NuVasive and neXus do not provide any evidence to contradict that these surgeons' decisions to switch to Alphatec products was independent and not at the request of either Mr. Robins or Mr. Arthun.  Furthermore, based on the potential commissions associated with these surgeon-customers, it is likely that Mr. Robins and Mr. Arthun were motivated to switch employers as a result of the surgeons' choice, rather than vice versa.

21

ORDER DENYING NUVASIVE, INC. & NEXUS SURGICAL INNOVATION, INC.'S MOTIONS FOR PRELIMINARY INJUNCTION ~ 24

1    Aside from the allegations related to the aforementioned surgeon-customers,

2    NuVasive and neXus do not provide evidence that Mr. Robins and Mr. Arthun have

3    violated the restrictive covenants of their agreements other than broadly concluding

4    that the sales representative cannot perform their job for Alphatec without soliciting

5    NuVasive/neXus surgeon-customers.  ECF Nos.  17-1 at 4, 25-2 at 5–6.  There is not

6    a sufficient showing before the Court that this conclusion as applied to Mr. Robins

7    and Mr. Arthun is true.

8    NuVasive and neXus also fail to specify any other surgeon-customers whose

9    business NuVasive and neXus allegedly have lost as a result of Mr. Robins' and Mr.

10    Arthun's efforts on behalf Alphatec.  *Contra A Place for Mom*, 2020 WL 4430997 at

11    *7 (finding that Plaintiff had demonstrated serious questions on the merits of breach

12    of contract claim with "evidence that it has in fact lost at least one referral source

13    and that Defendant solicited at least 20 more.").  Rather, NuVasive and neXus claim

14    that "Alphatec's raid on neXus' sales personnel negatively impacted its business and

15    its corporate valuation."  ECF No. 25-2 at 5.  Alphatec is not a defendant to this

16    action and their alleged "raid" is not material to whether Mr. Robins or Mr. Arthun

17    are soliciting current or former surgeon-customers.

18    NuVasive and neXus claim that "[i]t is laughable to even suggest that the

19    Sales Reps . . . do not regularly solicit surgeons and/or medical facilities."  However,

20    two other former neXus sales professionals, Chad Marshall and Brian Sandilands,

21    were hired by Alphatec in late 2020.  ECF No. 25-2 at 5.  NuVasive and neXus did

ORDER DENYING NUVASIVE, INC. & NEXUS SURGICAL INNOVATION,
INC.'S MOTIONS FOR PRELIMINARY INJUNCTION ~ 25

not bring suit against Mr. Marshall and Mr. Sandilands, "because to

[NuVasive's/neXus'] knowledge, they are complying with their restrictive

covenants." *Id.*  Assuming those sales representatives signed the same Agreement as

Mr. Robins and Mr. Arthun, and are performing similar duties on behalf of

Alphatec, the only way in which Mr. Marshall and Mr. Sandilands are complying

with their restrictive covenants, and Mr. Robins and Mr. Arthun are not, is if they

are in a different sales territory than that which they serviced on behalf of NuVasive

and neXus.  Therefore, the Court finds that NuVasive and neXus have not

demonstrated a likelihood of success as to their claim that Mr. Robins and Mr.

Arthun breached the nonsolicitation provisions of their respective Agreements.

## II.    Irreparable Harm

NuVasive and neXus claim they have and will continue to suffer irreparable

harm because Mr. Robins and Mr. Arthun are actively soliciting the business of

NuVasive and neXus surgeon-customers on behalf of their competitor, Alphatec.

ECF No 6-1 at 13.

In order to obtain a preliminary injunction, a party must establish that

irreparable harm is likely.  *Winter*, 555 U.S. at 22.  Irreparable harm is defined as

harm for which there is no adequate legal remedy, such as an award of damages.

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.,* 994 F.2d 597, 603

(9th Cir. 1991).  Evidence of "threatened loss of prospective customers or goodwill .

. . supports a finding of the [likelihood] of irreparable harm."  *Stuhlbarg Intern Sales*

ORDER DENYING NUVASIVE, INC. & NEXUS SURGICAL INNOVATION,
INC.'S MOTIONS FOR PRELIMINARY INJUNCTION ~ 26

*Co., Inc. v. John D. Brush and Co., Inc.,* 240 F.3d 832, 841 (9th Cir. 2001).

Customer goodwill "relates to the positive reputation, public confidence in, and

customer loyalty to, an individual business entity." *True Organic Products, Inc v.*

*Cal. Organic Fertilizers Inc*., 2019 WL 1023888 at *5 (E.D. Cal. March 4, 2019)

(citation omitted).

The Court finds that NuVasive and neXus have failed to show a likelihood of

irreparable harm for three reasons.  First, there is no evidence that demonstrates that

NuVasive and neXus have lost surgeon-customers and associated "good will"

because of Mr. Robins and Mr. Arthun.  Although NuVasive and neXus argue that it

will not be able to regain the business of those surgeons identified in the record

absent an injunction prohibiting Mr. Robins and Mr. Arthun from working with

these surgeons for one year, NuVasive and neXus have failed to proffer evidence

showing that the loss of the former surgeon-customers' business was not already lost

prior to Mr. Robins' and Mr. Arthun's separation.  ECF No. 17-1 at 3–4.  In other

words, NuVasive and neXus have failed to show that the irreparable harm they now

allege actually was caused by Mr. Robins and Mr. Arthun, and not just a result of a

superior product or the competitive nature of the industry.

Second, a finding of irreparable harm based on future losses of surgeon-

customers is wholly speculative.  NuVasive and neXus argue that the chances they

lose the business of other surgeons within Mr. Robins' and Mr. Arthun's former

sales territories increases if the sales representatives are not required to comply with

their noncompetition and nonsolicitation obligations. *Id.* at 4.  However, because NuVasive and neXus failed to provide evidence showing causation between the loss of the identified surgeons and any actions by Mr. Robins or Mr. Arthun, the conclusion that they will lose the business of other surgeons absent an injunction is wholly speculative. *Caribbean Marine Servs. Co., Inc. v. Baldrige,* 844 F.2d 668, 674 (9th Cir.1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction.").  There is a lack of evidence in the record to support such speculation.

Finally, the alleged loss of business is readily compensable by monetary damages. *Amylin Pharm., Inc. v. Eli Lilly & Co.,* 456 F. App'x 676, 678 (9th Cir. 2011) ("[L]ost profits due to lost sales generally constitutes the type of harm that is fully compensable through money damages and therefore does not support injunctive relief.").  Additionally, there is no evidence that Mr. Robins' and Mr. Arthun's actions threaten to put NuVasive out of business. *See Los Angeles Memorial Coliseum Comm'n*, 634 F.2d 1197, 1203 (9th Cir. 1980).  Although NuVasive and neXus claim that "Alphatec's raid on neXus' sales personnel negatively impacted [NuVasive's] business and its corporate valuation," Alphatec is not a defendant to this action and their alleged "raid" is not material as to whether Mr. Robins or Mr. Arthun have caused or will cause NuVasive and neXus to suffer "irreparable harm." ECF No. 25-2.

ORDER DENYING NUVASIVE, INC. & NEXUS SURGICAL INNOVATION, INC.'S MOTIONS FOR PRELIMINARY INJUNCTION ~ 28

Therefore, the Court finds that NuVasive and neXus have failed to make a "clear showing" of the likelihood that it will suffer irreparable injury absent a preliminary injunction.

**III.    Balance of Equities**

NuVasive and neXus argue that the balance of equities tip in their favor because absent an injunction, they will "forever lose the benefit of the Agreements' bargain . . . as they will not be permitted the appropriate time period to reestablish their relationships with [ ] former surgeon-customers."  ECF No. 18 at 11.

To balance the hardships, the Court must "identify the possible harm caused by the [injunction] against the possibility of harm caused by not issuing it."  *Univ. of Hawai'I Prof. Assembly v. Cayetano*, 183 F.3d 1096, 1108 (9th Cir. 1999).  Where there are "serious questions" on the merits, the balance of hardships must tip sharply in the moving party's favor and the other factors must be satisfied for a preliminary injunction to be issued.  *See Short*, 893 F.3d at 675.

It is unlikely that Mr. Robins and Mr. Arthun will suffer any harm from an injunction prohibiting the solicitation of their former NuVasive/neXus surgeon-customers, especially where the record indicates they already are complying with the nonsolicitation obligations.  However, the purported harm identified by NuVasive and neXus if an injunction is not issued, specifically the inability to regain the three former-surgeon customers' business, is not persuasive.  The record indicates that this business was lost prior to Mr. Arthun's and Mr. Robins' separation from neXus.

ORDER DENYING NUVASIVE, INC. & NEXUS SURGICAL INNOVATION, INC.'S MOTIONS FOR PRELIMINARY INJUNCTION ~ 29

Injunctive relief is not an appropriate remedy for harm caused by the nature of a market as opposed to harm caused by the intentional actions of a market participant. Accordingly, NuVasive and neXus have not demonstrated that the balance of equities tip sharply in their favor.

## IV. Public Policy

Finally, the Court analyzes whether a preliminary injunction serves the public interest. NuVasive and neXus argue that the public interest is benefited by the proper enforcement of restrictive covenants. ECF No. 18 at 12. The Court finds that the record is incomplete to support whether public interest is meaningfully implicated by this dispute. To the extent that the public interest is implicated, however, it favors workforce mobility which "is important to economic growth and development." Wash. Rev. Code § 49.62.005.

## V. Conclusion

Upon considering the likelihood of success on the merits, irreparable harm, the balance of equities, and the public interest, the Court finds that NuVasive and neXus have not made a "clear showing" that demands an "extraordinary and drastic remedy" of a preliminary injunction. *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997).

Accordingly, **IT IS HEREBY ORDERED**:

1.     NuVasive, Inc. & NeXus Surgical Innovation, Inc.'s Motion for Preliminary Injunction Against Matt Robins **ECF No. 14**, is **DENIED**.

ORDER DENYING NUVASIVE, INC. & NEXUS SURGICAL INNOVATION, INC.'S MOTIONS FOR PRELIMINARY INJUNCTION ~ 30

2.    NuVasive, Inc. & NeXus Surgical Innovation, Inc.'s Motion for Preliminary Injunction Against Ronald V. Arthun, **ECF No. 17**, is **DENIED**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** December 3, 2020.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge

ORDER DENYING NUVASIVE, INC. & NEXUS SURGICAL INNOVATION, INC.'S MOTIONS FOR PRELIMINARY INJUNCTION ~ 31